IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ALABAMA

| | |
|---|---|
| DONALD DOHN and CAROLYN DOHN § <br> § <br> § <br> § <br> § <br> § <br> Plaintiff, § <br> § <br> v. § <br> § <br> AMERICAN GENERAL LIFE INSURANCE § <br> COMPANY, § <br> § <br> Defendant. § <br> § | CIVIL ACTION NO. 26-cv-00036 |

## COMPLAINT

Plaintiffs Donald Dohn and Carolyn Dohn, through undersigned legal counsel, file this Complaint against Defendant American General Life Insurance Company ("AIG") and allege as follows:

### THE PARTIES

1. Donald Dohn is a citizen of Alabama residing in Fairhope, Alabama. He is a retired neurosurgeon and turned 100 years old on August 16, 2025.

2. Carolyn Dohn is citizen of Alabama residing in Fairhope, Alabama. She is married to Donald Dohn and has his power-of-attorney. Carolyn Dohn brings this action individually and, to the extent necessary, as attorney-in-fact for Dr. Dohn pursuant to a valid power of attorney, exercising Dr. Dohn's contractual rights under the Policy.

1

3. AIG is a Texas corporation with its principal place of business in Houston, Texas. AIG is the successor to Old Line Life Insurance Company of America ("Old Line").

## JURISDICTION AND VENUE

4. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a) as it is between citizens of different States and the amount in controversy exceeds $75,000.

5. Venue is appropriate in this District under 28 U.S.C. § 1391(b)(2) because the events or omissions giving rise to the claims occurred in this District.

## FACTUAL BACKGROUND

6. On September 28, 1986, Old Line issued a life insurance policy to Donald Dohn, policy number 1351611L, with a stated value of $500,000.

7. Donald Dohn initially paid an annual premium of $11,000 for the policy.

8. On February 21, 1988, Dr. Dohn named Carolyn Dohn as the beneficiary under the policy.

9. On March 1, 1988, Dr. Dohn completed a policy change to reduce the coverage to $300,000 so no premiums would have to be paid after he reached the age of 70. The change resulted in his premiums increasing by $100 per quarter.

10. In 1991, Old Line notified Dr. Dohn it had lost his insurance policy.

11. Dr. Dohn turned 70 years old on August 16, 1995 but Old Line continued to invoice him for premiums.

12. Dr. Dohn continued to pay the premiums.

13. In 1996 and 1997, Dr. Dohn contacted his former agent and Old Line seeking a refund of the premiums charged after he turned 70.

14. A settlement was reached between Dr. Dohn and Old Line on October 27, 1997. The written settlement agreement is attached hereto as Exhibit A.

15. Under the terms of the settlement, Dr. Dohn and Old Line agreed that (1) the premiums since September 8, 1995 would be returned with interest; (2) the policy would be considered paid up in the amount of $300,000 with no further premiums payable; (3) that the policy going forward would consists of a sample policy provided by Old Life in September 1997 as modified by the settlement agreement (hereinafter the "Policy"); and (4) Dr. Dohn would release his claims through the date of the release.

16. Old Line merged into AIG in 2003 and since that time AIG has serviced the Policy.

17. AIG's service of the Policy was haphazard and error prone. For instance, AIG lost all record of the beneficiary designation. AIG sent Dr. Dohn multiple letters stating that a disability claim on the Policy had been approved when he had made no such claim. AIG also sent correspondence incorrectly describing the Policy as being a universal life policy with a changing monthly cost of insurance. AIG subsequently sent Dr. Dohn an unsolicited form for surrendering his policy. AIG persisted in using a policy administration system (software) to administer this custom policy although it knew the system was defective and incapable of accurately managing the policy.

18. The Policy provides the owner three options for the death benefit as follows:

**DEATH BENEFIT**

The death benefit at any time will be one of the following options chosen by the owner:

Option 1. The specified amount includes the cash value. The death benefit will be the greater of (a) the specified amount or (b) the applicable percentage of the cash value.

Option 2. The specified amount does not include the cash value. The death benefit will be the greater of (a) the specified amount plus the cash value or (b) the applicable percentage of the cash value.

Option 3. The specified amount includes the cash value. The death benefit will equal the specified amount.

Applicable Percentage. The applicable percentage depends on the insured's attained age at the beginning of a policy year, as shown in the Table of Applicable Percentages on page 3.

19. Dr. Dohn never selected a death benefit from the three options in the Policy.

20. On November 9, 2022, Dr. Dohn informed AIG he wished to select death benefit option 2. This election was further memorialized by letter sent to AIG on November 16, 2022.

21. Dr. Dohn's letter of November 16, 2022 also confirmed that he and his wife Carolyn informed the AIG representative during the November 9, 2022 conversation there was no maturity date applicable to the policy.

22. AIG finally responded by letter dated April 11, 2023. AIG's letter stated it had artificially created a cash value for the Policy in its system, had sent incorrect annual statements, and took the position that the benefit under the policy was $300,000 payable at death. AIG's letter did not dispute Dr. Dohn's statement that there was no maturity date for the policy, nor did the letter contend there was a maturity date.

23. AIG failed to initial any legal action contesting the selection of death benefit option 2 or seeking a declaratory judgment concerning the death benefit within two years of November, 2022.

24. The policy contains the following incontestability provision:

> INCONTESTABILITY
>
> WE WILL NOT CONTEST THIS POLICY AFTER IT HAS BEEN IN FORCE DURING THE LIFETIME OF THE INSURED FOR TWO YEARS FROM THE DATE OF ISSUE. WE WILL NOT CONTEST ANY REINSTATEMENT AFTER THE REINSTATEMENT HAS BEEN IN FORCE DURING THE LIFETIME OF THE INSURED FOR TWO YEARS. IF WE DO CONTEST A REINSTATEMENT, WE WILL CONTEST ONLY STATEMENTS MADE IN THE REINSTATEMENT APPLICATION. WE WILL NOT CONTEST ANY INCREASE IN SPECIFIED AMOUNT AFTER THE INCREASE HAS BEEN IN FORCE DURING THE LIFETIME OF THE INSURED FOR TWO YEARS. WE WILL NOT CONTEST A CHANGE IN DEATH BENEFIT OPTION AFTER THE CHANGE HAS BEEN IN FORCE DURING THE LIFETIME OF THE INSURED FOR TWO YEARS. IF WE SUCCESSFULLY CONTEST A CHANGE IN DEATH BENEFIT OPTION, THE DEATH BENEFIT WILL BE WHAT WOULD HAVE BEEN PAYABLE IF THIS CHANGE HAD NOT TAKEN PLACE.

25. The Dohns relied upon the lack of a timely contest by AIG concerning the death benefit option selection as creating a situation in which the selection of death benefit option 2 was effective.

26. On October 8, 2025, AIG sent Dr. Dohn a check in the amount of $327,155.27. The transmittal stated the contract had matured to its full net value and was terminated. AIG stated that the maturity value was $365,972.54 and it withheld taxes in the amount of $38,817.27.

27. The Dohns have not cashed or deposited the check.

### COUNT ONE – BREACH OF CONTRACT (MATURITY DATE)

28. The Dohns repeat and reallege all paragraphs above as if set forth fully herein.

29. The Policy has no maturity date.

30. AIG breached the Policy by asserting a non-existent maturity date, purporting to terminate coverage prior to Dr. Dohn's death, and tendering payment inconsistent with the Policy's express terms, thereby anticipatorily repudiating its contractual obligations.

31. Dr. Dohn has performed all of his obligations under the Policy.

32. The Dohns were damaged as a result of AIG's breach of the contract of insurance as termination of the policy of insurance will cause them to lose the guaranteed minimum 4.5% annual interest under the policy and they will incur tax liabilities and related damages that they would not incur if the policy proceeds are paid out as life insurance death benefits.

### COUNT TWO – BREACH OF CONTRACT (CASH VALUE)

33. The Dohns repeat and reallege all paragraphs above as if set forth fully herein.

34. The policy provides for a guaranteed cash value interest rate of 4.5% per year, compounded annually.

35. The 1997 settlement agreement, which forms part of the agreed Policy, provided that the cash value could not be used for a policy loan and that it would not be reduced to pay any future premiums.

36. The 1997 settlement did not modify the cash value existent in the policy as of the date of the settlement.

37. Old Line's annual report for the Policy dated September 27, 1997 stated the policy had a cash value of $115,004.42 as of the date of the report.

38. Old Line subsequently improperly reduced the cash value of the Policy to $93,885.46 as September 28, 1997 in its internal accounting system.

39. AIG used incorrect cash value amounts in calculating the cash value of the policy.

40. By its own admission, AIG created artificial cash values in its system and sent incorrect annual statements.

41. AIG is in breach of the Policy's provisions concerning the computed cash value amount.

42. Dr. Dohn has performed all of his obligations under the Policy.

43. The Dohns were damaged as a result of AIG's breach of the contract's provisions concerning the calculation of cash value.

### COUNT THREE – BREACH OF CONTRACT (DEATH BENEFIT)

44. The Dohns repeat and reallege all paragraphs above as if set forth fully herein.

45. Dr. Dohn selected option 2 for the death benefit under the Policy.

46. AIG is barred from now contesting the change in the death benefit option under the Policy's incontestability provision.

47. The death benefit under option 2 is the specified amount plus the cash value, as that amount is greater than the applicable percentage of cash value.

48. AIG is in breach of the contract of insurance through its anticipatory repudiation of tendering payment under the policy prior to Dr. Dohn's death.

49. The amount tendered by AIG does not constitute the correct death benefit under the policy.

50. The death benefit under Option 2 exceeds $739,922.54 and continues to accrue interest at not less than 4.5% annually[1].

51. Alternatively, if option 1 applied, the death benefit would be the applicable percentage of cash value as it is greater than the specified amount in the policy of $300,000. The applicable percentage is 128%. The cash value of the policy is more than $439,922.54 and continues to accrue interest at not less than 4.5% annually[2], resulting in a death benefit under option 1 being in excess of $563,100.85.

52. The death benefit payable under option 1 and 2 will continue to increase until Dr. Dohn's death based upon the minimum annual interest of 4.5%.

53. AIG breached the Policy by declaring the Policy terminated prior to Dr. Dohn's death, thereby anticipatorily repudiating its contractual obligations, including its obligation to pay the death benefit required by the Policy's express terms.

54. The Dohns are damaged as a result of AIG's breach of contract and anticipatory repudiation in connection with the death benefit payable under the policy.

### COUNT FOUR - BAD FAITH

55. The Dohns reallege and incorporate by reference all preceding paragraphs as if fully set forth herein.

56. The Policy contains no maturity date and does not authorize cancellation on the basis that the Policy has "reached maturity."

---

[1] This calculation uses a 4.5% annual interest rate for the calculation of the additional cash value to be included based upon the known error in cash value amount as set forth in paragraphs 37 and 38 above. It is known that Old Line declared an interest rate of 5.5% for 1997-1998 and higher rates may have been used in other years. The Policy's cash value continues to accrue interest through death resulting in a higher cash value and higher death benefit. Discovery may uncover additional errors in the cash value calculation.

[2] See footnote 1 concerning calculation of cash value.

7

57. At all relevant times, AIG knew and acknowledged that the Policy had no maturity date, including through prior communications with the plaintiffs.

58. Despite this knowledge, AIG purported to terminate the Policy on the asserted ground that it had reached maturity.

59. AIG's stated basis for cancellation was factually false, contrary to the express terms of the Policy, and unsupported by any reasonable interpretation of the Policy language.

60. The Policy is governed by Wisconsin law pursuant to the choice of law provision in Exhibit A. Under Wisconsin law, an insurer owes its insured a duty of good faith and fair dealing and may not deny benefits, terminate coverage, or cancel a policy without a reasonable basis.

61. AIG lacked any reasonable basis for canceling the Policy on the ground of maturity because:

(a) The Policy contains no maturity provision;

(b) No policy language supports termination based on maturity;

(c) AIG had previously acknowledged the absence of a maturity date; and

(d) AIG failed to identify any legitimate contractual or factual basis for cancellation.

62. AIG knew, or recklessly disregarded, the lack of a reasonable basis for cancellation, including by:

(a) Ignoring the plain language of the Policy;

(b) Disregarding its own prior acknowledgments regarding maturity;

(c) Failing to conduct a reasonable investigation into whether the Policy could mature; and

(d) Advancing a justification that Defendant knew or should have known was unsupported.

63. AIG's conduct was intentional, willful, and in reckless disregard of the rights of the Plaintiffs.

64. As a direct and proximate result of AIG's bad-faith conduct, the Dohns have suffered damages, including but not limited to:

- o Loss of policy benefits and coverage;
- o Loss of the security and protection afforded by the Policy;
- o Out-of-pocket costs and expenses, including tax obligations;
- o Emotional distress and anxiety associated with the wrongful cancellation; and
- o Attorneys' fees and litigation expenses incurred to secure benefits wrongfully denied.

65. AIG's conduct was outrageous, egregious, and in conscious disregard of Plaintiff's rights, warranting the imposition of punitive damages under Wisconsin law.

66. Plaintiffs are entitled to recover all compensatory damages, consequential damages, punitive damages, interest, costs, and such other relief as the Court deems just and equitable.

## COUNT FIVE – DECLARATORY JUDGMENT AND EQUITABLE RELIEF

67. The Dohns repeat and reallege all paragraphs above as if set forth fully herein. This claim is set forth as an alternative statement of claim as permitted by Rule 8(d)(2) of the Federal Rules of Civil Procedure.

68. The Dohns seek a declaratory judgment that the Policy has no maturity date, that death benefit 2 applies and computed as the cash value at the time of death plus $300,000, that the cash value has been incorrectly calculated by AIG, and a declaration as to the correct amount of the cash value as of the date of judgment.

69. The Dohns further seek a declaratory judgment that AIG's attempt to terminate the Policy based upon "maturity" is invalid as there is no maturity date under the policy and for the Court to exercise its equitable powers to order AIG to reinstate the Policy and permanently enjoin AIG to perform its obligations under the Policy, including paying Death Benefits pursuant to Option 2.

## **PRAYER FOR RELIEF**

WHEREFORE, the Dohns pray for Judgment against AIG as follows:

A.  Compensatory damages and punitive damages;

B.  Interest and costs as provided by law;

C.  Alternatively, under Count Five, the Dohns seek a declaratory judgment as set forth above and for reinstatement of the Policy, injunctive relief, and an award of costs for this action;

D.  Such other and further relief as this Court deems just and prior.

Dated: February 2, 2026

                        Respectfully Submitted,

                        */s/ Jarrod J. White*
                        JARROD J. WHITE (WHITJ1010)
                        DOROTHY A. BARKER (BAR160)
                        *Attorneys for Plaintiffs*

**OF COUNSEL:**
FRAZER GREENE LLC
Post Office Box 1686
Mobile, Alabama 36633
Tel: (251) 431-6020
jjw@frazergreene.com
dab@frazergreene.com

**AIG to be served by certified mail at:**

American General Life Insurance Company
c/o Corporation Service Company, Inc.
641 S. Lawrence St.
Montgomery, AL 36104